**In the Matter of Leroy NESBITT,
Appellant.**

**No. 7357.**

District of Columbia Court of Appeals.

Submitted Sept. 27, 1973.

Decided Dec. 18, 1973.

Leroy Nesbitt, pro se.

C. Francis Murphy, Corp. Counsel, Richard W. Barton and Leo N. Gorman, Asst. Corp. Counsels, Washington, D. C., were on the brief, for appellee.

Before KELLY, PAIR and HARRIS, Associate Judges.

KELLY, Associate Judge:

On a morning in March of this year Leroy Nesbitt, attorney at law, appeared before John R. Hess, Associate Judge of the Superior Court of the District of Columbia, representing the defendant in the case of United States v. Kitt, Cr. A. No. 66860–72. When asked by the court if he was ready for trial, Mr. Nesbitt said that he was not for the reasons that (1) the defendant was not yet present; (2) a jury was deliberating in a case just completed before Judge William B. Jones of the United States District Court for the District of Columbia from which he had been excused by Judge Jones for any purpose which would not interfere with his return upon receipt of a note from the jury or a verdict (to be taken by Judge Aubrey E. Robinson, Jr.), and (3) Nicholas S. Nunzio, a brother Associate Judge of the Superior Court, had continued a previously scheduled felony trial on a day-to-day basis pending completion of the District Court case and was ready to begin that trial. Additionally, Mr. Nesbitt informed the

court that he had left a notice of this possible conflict with the courtroom clerk the day before.

Judge Hess indicated that he did not consider a conflict with his brother judge a sufficient basis to grant a continuance in the case before him and because Mr. Nesbitt had not moved for a continuance two days in advance of trial, as required by SuperCt.Cr. Rule 111(c),[1] ordered that the trial proceed as soon as Mr. Kitt arrived.[2] Mr. Nesbitt was excused momentarily to advise Judge Nunzio of this late development. Upon his return to the courtroom, following a brief colloquy as to where Mr. Kitt could possibly be, he was again excused for the purpose of trying to locate his client. Judge Hess announced before recessing that should Mr. Kitt be found either he or the Chief Judge would proceed with the trial.

When Judge Hess returned to the courtroom neither Mr. Nesbitt nor Mr. Kitt was there. The government was advised to maintain the status quo with its witnesses [3] and while realizing that in his client's absence Mr. Nesbitt might have gone to trial before Judge Nunzio,[4] Judge Hess nevertheless observed that if Mr. Kitt showed up he expected Mr. Nesbitt to be there. The transcript reveals that after proceeding with other matters Judge Hess addressed a lady in the courtroom, Mrs. Kitt, to ask where her husband was, Mr. Kitt having been observed in the courtroom a few minutes before. He had stepped out, Mrs. Kitt said, to find Mr. Nesbitt, adding that earlier they had been sent to the wrong courtroom.[5]

Judge Hess told Mrs. Kitt to have a seat, recapitulated for the record the events of the morning, including information that a bailiff had just checked and learned that contrary to his orders Mr. Nesbitt "had got himself involved" in a trial before Judge Nunzio, and in his absence held Mr. Nesbitt in contempt of court for disobeying a direct order that he be ready to begin the Kitt trial. At that moment Mr. Kitt reappeared and stated he had found Mr. Nesbitt in trial in a rape case, third floor, Room 203, and had been told the trial might last two or three days. The matter was passed until a continued date could be agreed upon.

The transcript picks up with the events of the next morning, beginning with status calls in two other cases being handled by Mr. Nesbitt who was apparently before a United States Magistrate, due back before Judge Nunzio for trial, but expected momentarily by Judge Hess. When he arrived Mr. Nesbitt asked to be relieved of his appointment as defense attorney in the first case since his normal caseload in felony court had reached a stage of unavoidable conflict by reason of the doubling and then tripling of judicial manpower to handle felony trials. The motion was eventually granted. At the suggestion of Judge

---

1. Rule 111(c) provides:
   Except in extraordinary or unforeseen circumstances, no continuances shall be granted in any case unless requested at least two days before the scheduled date of trial.

2. Judge Hess had been told that government witnesses were meanwhile assembling in the office of the Assistant United States Attorney.

3. As government counsel explained: "I have two lay witnesses who are here now, plus the police officers. I have one lay witness who is ill, who [sic] I put on call for an hour, who is reluctant to come down because she has the flu, but who will come down on an hours [sic] notice, if required, and then I have another lay witness on call who will be here within thirty minutes of the time I call him." [R. at 6.]

4. The court said: ". . . I gather he's going to be in trial before Judge Nunzio. I don't know. . . ." [R. at 7.]

5. Mr. Kitt subsequently explained: "Well, what happened, Your Honor, I was supposed to report to the bail agency, and she told me to go to Room 102. It had a sign that said Hannon, Room 308, and one of the clerks brought me down here. I talked to him, and he brought me down here." [R. at 11.] The court found this to be a logical explanation and quashed the bench warrant that had been issued for Kitt's appearance.

Hess, with which he concurred, his appointment in the second case was also vacated. Mr. Kitt's case then resurfaced on the question of a continued date; however, when Mr. Nesbitt informed the court that his trial schedule was full for the next several months he was removed as defense attorney in that case also, again without objection.

Once on the Kitt case, Judge Hess began anew to review the events of the previous morning. Additional facts came to light when Mr. Nesbitt protested that the court's last instruction to him, through the courtroom clerk, was that he was excused to go to Judge Nunzio. It then developed on the record that after Judge Hess had excused Mr. Nesbitt the day before to locate his client Nesbitt had reappeared in the courtroom, only to be confronted by two deputy United States marshals who had arrived to escort him to Judge Nunzio's courtroom to begin trial. A telephone call was made to Judge Hess, still in recess, after which Mr. Nesbitt was told by the clerk that he was excused to go to Judge Nunzio. Mr. Nesbitt took this to mean that he was excused to go to trial before Judge Nunzio while Judge Hess made it clear on the record that it was his intention to excuse Mr. Nesbitt only to make his peace with Judge Nunzio and to return. As the Assistant United States Attorney on the scene related it, Mr. Nesbitt insisted, despite his position of peril in the firm and impatient grasp of the two deputy marshals, that he would not leave the courtroom until a call had been made to Judge Hess to ask his permission. But it appeared that, when excused, Nesbitt was not specifically told to return.

After further relation of each participant's understanding of the event, Mr. Nesbitt was again held in contempt of court. Later, in addition to the above recited facts, Judge Hess also referred in the written order of contempt to a prior order to show cause, discharged after a hearing,

in which "the Court made it clear that it would not tolerate any breakdown in its calendar due to counsel's failure to comply with Rule 111(c) . . . ."[6]

■ We are unable to accept appellant's contention that the trial court erred in acting summarily under Super.Ct.Cr. Rule 42(a) to hold him in contempt for the reason that his actions, if contemptuous, were not committed in the presence of the court. The identical contention has been advanced and rejected on several occasions, In re Gates, 156 U.S.App.D.C. 88, 478 F.2d 998 (1973); In re Niblack, 155 U.S.App.D.C. 174, 476 F.2d 930 (1973), and is similarly rejected here. Nevertheless, a recent comment of the Circuit Court of Appeals deserves emphasis, namely,

> [I]t [is] appropriate to note, however, that in *Gates,* decided after *Niblack,* the court itself raised, but did not answer, the issue whether the "spirit of Rule 42(a) does not call upon the judge, when he apprehends that the issue of contempt for tardiness involves, by way of excuse, matters outside the presence of the court, to proceed by reference of the matter to another judge, and invocation of Rule 42(b)". *Gates,* 156 U.S.App.D.C. at ——, 478 F.2d [998] at 1000.[7]

■ Although we find no procedural error in the court's proceeding under Rule 42(a), it is our considered opinion that this record does not support a finding that appellant had the requisite intent to commit a criminal contempt. True, appellant's failure to follow Rule 111(c) by requesting a continuance two days before the scheduled trial date set in motion the unique chain of events which culminated in the contempt ruling. It is illogical to conclude, however, when the message from the courtroom end of the telephone was that Mr. Nesbitt was in the grasp of two deputy United States marshals who were to take him forthwith to Judge Nunzio to begin trial, and the

---

6. R. at 35.

7. In re Thomas W. Farquhar, (D.C.Cir., No. 72–1088, Oct. 30, 1973, slip op. at 4–5).

message from the chambers end of the telephone was that Mr. Nesbitt was excused to go to Judge Nunzio, that Nesbitt's subsequent absence for trial before Judge Hess was a deliberate and willful contempt of court. This is not to say that Judge Hess did not seriously intend and sincerely believe (however realistically) that Mr. Nesbitt could have made his peace with Judge Nunzio and returned to his courtroom for the Kitt trial. That is precisely why a Rule 42(b) hearing before another judge of the Superior Court would have been particularly appropriate in this case, for it seems clear that there was a misunderstanding between court and counsel the depth of which needed development and clarification. What does appear to be the fact is that Mr. Nesbitt insisted on specific permission from Judge Hess before he would leave the courtroom and that he received that permission, through the clerk, with no caveat to return. Consequently, there is insufficient support in the record for the finding in the contempt order that "[n]othing was said by the Court or any of its personnel which could reasonably be construed by Mr. Nesbitt as authorizing him to commence trial in another case. . . . ."[8]

■ We conclude that under the circumstances of this case Mr. Nesbitt's actions were not indicative of a reckless or willful disregard of an order of court, contumacious in nature, or of a criminal intent to show disrespect for the court. It should be stressed, however, that "[t]he preservation of . . . [an] orderly system [of justice] depends upon the intelligent cooperation of judges and the attorneys who appear before them. Dereliction of duty on the part of either can disrupt the system. . . ."[9] Counsel must recognize their particular obligation to avoid those conflicts which disrupt the efficient functioning of the judicial system and to adhere strictly to the rules of court when such conflicts arise. Counsel are admon-

ished that a direct order of court is to be obeyed for only in unusual circumstances will this court fail to sustain a contempt citation for failure to do so.

Reversed.

---

8. R. at 35.

9. In re Thomas W. Farquhar *supra*, slip op. at 7 (Wilkey, J., dissenting). ·