**In the Matter of George DENNEY, Appellant.**

**No. 11736.**

District of Columbia Court of Appeals.

Submitted July 6, 1977.

Decided Sept. 28, 1977.

---

Leroy Nesbitt, Washington, D. C., for appellant.

Earl J. Silbert, U. S. Atty., John A. Terry and Steven R. Schaars, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee U. S.

Before NEWMAN, Chief Judge, and GALLAGHER and YEAGLEY, Associate Judges.

NEWMAN, Chief Judge.

Appellant, a member of the bar, was summarily adjudicated in criminal contempt for failing to appear timely before a judge of the Superior Court. He contends on appeal that the court erred in finding his conduct to constitute contempt. We agree and reverse.

The relevant facts are not in dispute. On the morning of November 30, 1976, in accordance with standard procedures, appellant placed his name on the list of attorneys available that day to accept court appointment to represent indigent defendants charged with criminal offenses. He was thereupon appointed to represent a defendant who, because he was in the "lockup," was scheduled for arraignment that afternoon. Appellant arrived at the courtroom for the scheduled arraignment five minutes before the scheduled commencement of 1:45 p.m. When his case had not been called by 2:20 p.m., appellant informed both the courtroom clerk and his client (who was still in the "lockup") that he had a previously scheduled probation revocation hearing before Judge Leonard Braman, another judge of the Superior Court, at 2:30 p.m. and that he would return to arraignment court no later than 3:30 p.m. Appellant thereupon proceeded to Judge Braman's courtroom to conduct the probation revocation hearing.

As fate often seems to befall trial lawyers, as soon as the appellant left the court-

room his client's case was called for arraignment. When the court inquired of appellant's whereabouts, both the clerk and the client informed the court of appellant's presence before Judge Braman. Quotation from the transcript can best describe what transpired thereafter.

COURT: Is Mr. Denney a new attorney? All right. Well, tell him this cost [another attorney] $50 for pulling that act the other day, unless he has a good excuse it's going to cost him $50.

\*      \*      \*      \*      \*      \*

COURT: Get a word over to Mr. George Denney that he better be here in five minutes, or he is going to be held in contempt.

\*      \*      \*      \*      \*      \*

UNIDENTIFIED: Your Honor.

COURT: Yes.

UNIDENTIFIED: Mr. Denney is before Judge Braman right now on a probation violation hearing (inaudible). It will probably be another 45 minutes before he could (inaudible).

COURT: Well, then he is going to be in contempt.

UNIDENTIFIED: I'll just tell him that.

COURT: You just tell him. He took his choice. Sometimes for one point, sometimes for two points.

\*      \*      \*      \*      \*      \*

DEPUTY CLERK: Would you like to address the Court?

MR. DENNEY: My name is George Denney.

COURT: Yes.

MR. DENNEY: I've been over in Judge Braman's court and a message came over there while we were before Judge Braman—

COURT: I gave you five minutes to come back and that was 40 minutes ago. See you were here; you were assigned; you were on the list. I fined [another attorney] $50 the other day now why shouldn't I do the same for you. I'm supposed to do equal justice.

MR. DENNEY: Your Honor, if I could explain my situation today—

COURT: Judge Braman, fine. That's fine but there's only about one other judge in this Court senior to me, and I'm in Arraignment Court. Arraignment comes ahead of these other things unless you're actually in trial. That is what the Code says.[1] You weren't in trial; it was

1. The judge appears to have been referring to the concordat reached by the four trial and appellate courts in the District of Columbia, which is incorporated in Super.Ct.Civ.R. 104 (made applicable to criminal proceedings by Super.Ct.Cr.R. 57). Subsection (b) thereto reads:

> (b) Priorities in Trial Courts. Actual trials of civil or criminal cases in this court or in the U.S. District Court for the District of Columbia will be accorded priority over any nontrial matters in either court. For the purpose of this Rule, a hearing on a preliminary injunction shall be regarded as a trial. A judge shall set a date for trial only after ascertaining that trial counsel have no conflicting trial or appellate engagement in any court within the District of Columbia. For the category of cases being handled on a master calendar system, where cases are set without presence of counsel and notice is sent to counsel when the case is set by the Civil or Family Assignment Commissioner, or is reset by the commissioner if it develops that the original setting could not be accommodated, an attorney who claims the notice presents him with a conflict shall take action promptly after receipt of advice of the trial date set, and make application for a change in date. The judge in control of the calendar will take or approve action on such application only after ascertaining the pertinent court engagements of the counsel involved. If, despite the foregoing and the obligations imposed on counsel by section (c) of this Rule counsel should have more than one trial set on one day, the following priorities will be recognized:
>
> (1) That case which is first set to commence trial on a specific day will receive priority over cases which are later set to commence trial on that day. A continued case shall be treated as set as of the last setting date.
>
> (2) Any trial in progress, including a trial in progress from day to day, shall take precedence over trial or nontrial engagements of counsel which are set for times during which the trial is still in progress.
>
> (3) Nontrial matters in a trial court will yield to trials in any court.
>
> (4) If a scheduled trial conflicts with a previously set nontrial matter and, because of

a probation revocation before Judge Braman, as I understood.

MR. DENNEY: That's correct, Your Honor.

COURT: I defer to people who are senior to me, and for sixteen years I have deferred to people who are senior to me, but now I'm entitled to the same respect, and I'm going to get it. So unless you have a real good story, it's going to cost you $50.

Thereupon, appellant set forth the facts as we have recited them above. He went on to inform the court that when Judge Braman received the phone call from the clerk in the arraignment courtroom, the probation revocation hearing was in progress. Judge Braman understandably requested appellant to remain. Appellant complied; concluded the probation revocation hearing; and returned forthwith for the delayed arraignment. Appellant conveyed to the court Judge Braman's offer to verify the foregoing facts. Whereupon the court stated:

COURT: Won't do any good. He's a very good friend of mine, but he didn't do me any courtesy, did he? He kept you there. Seems that this is your first time, I'll fine you 50, and I will suspend 25. Now that's $25 in one day, because this Court's going to move as long as I'm here. If the U.S. Attorney doesn't have the jackets up, I dismiss them all. So I'm entitled to some respect and the thing's going to move. You impede the administration of justice because we had to go and postpone your case, just as [another attorney] did. I fined him 50, so you are getting off half price—$25 in one day. Now let's go ahead with the case.

■ Willful failure of counsel to appear in court timely is a breach of professional duty, and often causes disruption of the judicial process. *Sykes v. United States*, 144 U.S.App.D.C. 53, 444 F.2d 928 (1971). While breach of this professional duty is punishable by criminal contempt, such an adjudication must be based on a finding, adequately supported by evidence of record, that the failure to appear timely was the result of willful, deliberate, or reckless disregard of professional obligations. *Sykes, supra.* While counsel has responsibility to seek to avoid scheduling conflicts, *In re Hunt*, D.C.App., 367 A.2d 155 (1976); *In re Nesbitt*, D.C.App., 313 A.2d 576 (1973), judges have a concomitant obligation to assist counsel—and their fellow jurists—in their attempts to meet the scheduling demands of an ever burgeoning caseload in our judicial system.

In our decision in *In re Shorter*, D.C.App., 236 A.2d 318 (1967), we expressed our belief that trial judges are "not unmindful that conflicts do occur and will try . . . to accommodate the demands of an attorney's schedule and another judge's calendar . . . ." [*Id.* at 319.] Our belief on this score has now been incorporated into the concordat among the courts which has been included in their respective rules.[2]

■ Tested by the foregoing legal principles, the record herein fails to sustain the finding of "willfulness" necessary to a criminal contempt adjudication. It was not unreasonable for counsel to seek assignment to a new criminal case to be arraigned on a day when he had a short probation revoca-

the urgency or complexity of the nontrial matter or the number of persons involved, it would be difficult to reschedule the nontrial matter, counsel shall immediately advise the court in which or the judge before whom the conflicting trial is scheduled. The court or the judge will be receptive to counsel's application for a change of the trial date or an adjustment of the hours of trial, but shall retain discretion to grant or deny such an application.

(5) The judges of this court, insofar as practical, will attempt to adjust their sched-

ules to enable an attorney to attend to brief nontrial matters such as pleas, sentences, or status and pretrial conferences pending in another court. It is recognized that emergency situations will arise and that certain types of cases may require special consideration. The judges of this court will attempt to accommodate these situations by recognizing the need to depart, on occasion, from rigid scheduling rules when such situations are brought to their attention by counsel.

**2.** *See* note 1, *supra.*

tion hearing scheduled.[3] He appeared early for the afternoon session of arraignment court. He remained there forty minutes awaiting the call of his case.[4] After notifying both the courtroom clerk and his client of his conflict, destination, and anticipated time of return, he went where he had said he was going for the purpose he stated; i. e., to conduct a previously scheduled probation revocation hearing before another judge of the same court.

As is evident, a probation revocation proceeding generally entails counsel, witnesses, probation officials, and the parties being together at a particular time, specifically for that proceeding. Contrasted with this are the normal proceedings in a central arraignment court. There, cases are not called on any predetermined known schedule. All the participants, save the defendant and defense counsel, are generally present throughout that session of court. The arraignment proceedings are generally not lengthy,[5] and if one case is not ready, another can readily be called in its stead.[6] Thus, we cannot say that the decision of counsel to take the course he did supports a finding of willful disregard of his professional obligations or was otherwise contumacious.[7] Once before the judge conducting the probation revocation hearing, and with that hearing underway, it was not improper for appellant to accede to that judge's proper request that he remain to complete the hearing. Once released there, appellant returned forthwith to the arraignment courtroom. *See In re Rosen,* D.C.App., 315 A.2d 151 (1974).

We have on prior occasions noted the need for cooperation between bench and bar to avoid scheduling conflicts. *In re Shorter, supra; In re Nesbitt, supra.* As the efficient operation of the judicial process is hindered by counsel breaching a professional duty, *see, e. g., In re Hunt, supra; In re Rosen, supra,* so is the system disrupted when judges make impossible and conflicting demands on counsel. *Compare In re Nesbitt, supra with In re Schaeffer,* D.C. App., 370 A.2d 1362 (1977). Here, as in *Nesbitt,* counsel was inextricably caught between Scylla and Charybdis—conflicting orders from two judges to be in different places at the same time. While counsel in this case made the proper choice by complying with a request to complete a hearing then in process, he should not have been placed in such a predicament by the judge in arraignments.

█ It is not by resort to notions of seniority, nor by the more considerate judge being compelled to defer to the less considerate, that such conflicts should be resolved. Rather, where such scheduling conflicts do occur, it is only by resort to notions of cooperation, comity and collegiality among judges, coupled with a recognition that the successful functioning of a court system requires a partnership between bench and bar, that such unfortunate events as here presented can be avoided.

*Reversed.*

3. A contrary view would clearly wreak havoc on the economics of the private practice of law, and ultimately on the ability of courts, particularly trial courts, to provide counsel to indigent defendants as is constitutionally mandated. *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).

4. The record discloses that portions of the morning calendar were still being completed when appellant departed at 2:20 p.m.; i.e., the "lockup" arraignment call had not commenced.

5. Although the exact time taken to conduct the arraignment of appellant's client is not exactly ascertainable from the record on appeal, we do note that, from start to finish, it covers only two pages of reporter's transcript.

6. Given the number of cases generally pending before the arraignment court, there is unlikely to be a shortage of cases at 3:30 p.m. on any weekday. Indeed, nothing in this record indicates that the smooth operation of the arraignment court was in fact disrupted in any sense by appellant's absence.

7. Nor can we agree with the trial judge that Super.Ct.Civ.R. 104(b) provides that priority be given by counsel to an arraignment over a probation revocation hearing. Rather, the rule appears to be silent as to the priorities between nontrial hearings (save for preliminary injunction hearings) and arraignments.