**In the Matter of Richard A. SIRACUSA, Appellant.**

**No. 80–923.**

District of Columbia Court of Appeals.

Submitted March 10, 1982.

Decided May 24, 1982.

---

James H. Tatem, Washington, D. C., was on the brief for appellant.

Charles F. C. Ruff, U. S. Atty., at the time the brief was filed, and John A. Terry, Alan D. Strasser, Kathleen E. Voelker, and Regina C. McGranery, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before NEWMAN, Chief Judge, and KELLY and MACK, Associate Judges.

KELLY, Associate Judge:

Appellant, a member of the Bar of the District of Columbia, appeared in Superior Court before the Honorable Tim Murphy in courtroom 39 on May 22, 1980, at approximately 10:00 a. m. for a jury trial. He

1. Appellant represented Ms. Cunningham on some of the charges against her, while Mr.

asked Judge Murphy if he could be excused for a few minutes to appear before Judge Donald S. Smith in courtroom 24 for a plea hearing in *United States v. Cunningham*, No. M–2134–80, also scheduled for 10:00 a. m. Judge Murphy agreed, but said that he wanted appellant back in his courtroom by 10:15 to start the jury trial. Appellant thanked the court and left.

Appellant entered Judge Smith's courtroom at approximately 10:07. His client's case had already been called and Ms. Cunningham was standing before Judge Smith with her other attorney, George Dreos.[1] Earlier, appellant had told Ms. Cunningham that he would not be present at the hearing and that Mr. Dreos would represent her on all charges. Appellant took his place beside his client at the front of the courtroom, and the plea proceeding continued.

The plea hearing lasted past 10:15. While appellant was in courtroom 24, Judge Murphy's law clerk telephoned Judge Smith's courtroom to inform appellant that he was wanted in courtroom 39 for trial. He was informed by Judge Smith's law clerk that the plea proceeding involving appellant was still in progress. Appellant testified that the hearing ended at about 10:35, while the hearing transcript indicates that the hearing concluded at 10:20. After the plea proceeding was over, appellant returned to Judge Murphy's courtroom where the jury was waiting. On his way back to the courtroom, appellant encountered Judge Murphy's law clerk who was on his way to find him.

Judge Murphy called appellant to the bench and informed him that he intended to hold him in contempt. On May 23, 1980, Judge Murphy ordered appellant to show cause why he should not be held in contempt for coming to court twenty minutes after he was directed to return.

At the show cause hearing on June 10, 1980, Judge Murphy asked appellant whether he had informed Judge Smith that he

Dreos represented her on others.

was under an obligation to return to Judge Murphy's courtroom before 10:15. Appellant replied that he did not do so because when he entered the courtroom, the plea proceeding was already underway. He also testified that he felt his presence at the hearing was necessary because he did not know if Mr. Dreos was fully informed of the details of the case.[2]

After taking the matter under advisement, Judge Murphy, by his order of June 19, found appellant guilty of criminal contempt of court. Appellant received a stern warning, but imposition of sentence was suspended. Appellant duly noted this appeal.

### I

After submission of the briefs in this case, the government, citing *In re Cys*, D.C. App., 362 A.2d 726 (1976), moved to dismiss for lack of jurisdiction on the ground that a contempt citation with no sanction imposed is not an appealable final order.[3]

In *Cys*, the defendant, who was charged with unlawful entry, claimed as cause for dismissal of the case that he had been excluded from the first offender treatment program in derogation of his rights to due process and equal protection of the laws. In order to test in the court of appeals the question of whether the allegations in the defendant's motion were insufficient to raise a constitutional claim cognizable by the trial court, the court framed the issue by citing the prosecutor, Cys, for "technical" contempt for his refusal to comply with a discovery order directing him to produce written memoranda relating to the first offender treatment program. *Id.* at 727–28. The court did not sentence Cys, nor did it make any findings or enter any written order. On appeal, a division of this court held that "[a]bsent the imposition of a sanction, whether it be a fine, probation or term in jail, a citation for criminal contempt *in*

*and of itself* is not a final order and raises no justiciable issue for appeal." *Id.* at 728–29 (emphasis added).

■ Here, the government contends that since the trial court expressly suspended imposition of sentence after citing appellant for contempt, no sanction was imposed. Therefore, the government asserts, there is no final appealable order, and consequently this court lacks jurisdiction to consider this appeal. We disagree, for the suspension of imposition of sentence is a disposition authorized under D.C.Code 1981, § 16–710. Such a disposition terminates the case, giving the defendant a right of appeal. *Clayton v. United States*, D.C.App., 429 A.2d 1381 (1981); *see Thomas v. United States*, D.C.Mun.App., 129 A.2d 852 (1957).

In *Clayton v. United States, supra*, the appellant entered a plea of guilty. The trial court suspended imposition of sentence and entered no formal judgment of conviction. Appellant later moved to dismiss the charges against him, relying in part on *In re Cys, supra*, by asserting that because the trial court attached no sanction or disciplinary condition to the suspension of imposition of sentence, no judgment of conviction was pronounced. We determined that since suspension of imposition of sentence was a sentencing alternative authorized under D.C.Code 1973, § 16–710 (now D.C.Code 1981, § 16–710), the suspension of imposition of sentence was a final judgment from which a defendant could appeal. *Clayton v. United States, supra* at 1384, *citing Thomas v. United States, supra*. The absence of a formal sanction did not negate the conviction. Moreover, we distinguished *Cys*, which did not involve any disposition under § 16–710, by noting that it addressed only the issue of whether there was a right to appeal before pronouncement of sentence.

In the case at bar, as in *Clayton*, there was a disposition authorized under § 16–710. The trial court suspended imposition

---

2. Appellant had worked out a plea arrangement with respect to the charges on which he represented Ms. Cunningham, and had only communicated the substance of the agreement to Mr. Dreos through his secretary.

3. We note that, in its brief, the government expressly stated that this court had jurisdiction to consider the case, citing *Clayton v. United States*, D.C.App., 429 A.2d 1381 (1981).

of sentence, "an appropriate alternative for terminating a criminal case." *Id.* at 1384. This is not a case like *Cys*, where the appellant sought to appeal before pronouncement of sentence, *i.e.*, disposition of the case. Appellant therefore is appealing from a final judgment and since his appeal was timely noted, we have jurisdiction.[4]

## II

■ Willful failure of counsel to appear in court timely is a breach of professional duty, and often causes disruption of the judicial process. *In re Denney*, D.C. App., 377 A.2d 1360, 1363 (1977); *Sykes v. United States*, 144 U.S.App.D.C. 53, 444 F.2d 928 (1971). While breach of this professional duty is punishable by criminal contempt, such an adjudication must be based on a finding, adequately supported by evidence of record, that the failure to appear timely was the result of willful, deliberate or reckless disregard of professional obligations. *Id.* Counsel has a responsibility to seek to avoid scheduling conflicts. *In re Gratehouse*, D.C.App., 415 A.2d 1388 (1980); *In re Denney, supra; In re Hunt (Hunt I)*, D.C.App., 367 A.2d 155, *cert. denied*, 434 U.S. 817, 98 S.Ct. 54, 54 L.Ed.2d 72 (1976).

Tested by the foregoing legal principles, the evidence herein supports the finding of willfulness necessary to sustain a criminal contempt conviction. Appellant's decision to give priority to the guilty plea proceeding in Judge Smith's courtroom reflected "his deliberate choice, based on the assessment of the conflicting matters. This was not his choice to make." *In re Gregory*, D.C.App., 387 A.2d 720, 723 (1978). Appellant chose to leave Judge Murphy's courtroom at the time when trial was to begin, yet, as the record reflects, appellant's presence was not even required in Judge Smith's courtroom. Appellant not only had made arrangements to have another attorney handle the case, he had also expressly told his client that he would not be there, and she had agreed to that. It is apparent

that the conflict in this case was created by appellant himself. His contempt conviction is supported by the evidence and is

*Affirmed.*

4. The *Cys* case is unique. We wish to make it clear that trial judges have an obligation to pronounce sentence in contempt cases. The consequences of such convictions are often severe; they should be subject to appeal as a matter of right.