**In the Matter of Richard A. SIRACUSA, Appellant.**

No. 80-923.

District of Columbia Court of Appeals.

Reargued Nov. 19, 1982.

Decided March 16, 1983.

James H. Tatem, Washington, D.C., for appellant.

Robert P. Mosteller, Public Defender Service, Washington, D.C., amicus curiae.

Regina C. McGranery, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Alan D. Strasser and Kathleen E. Voelker, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and KELLY and MACK, Associate Judges.

PER CURIAM:

This is a rehearing of our decision of May 24, 1982 to affirm the appellant's conviction for contempt of court.[1] We hold now as we did then, that suspension of imposition of sentence is a final judgment in a case for purposes of the right to appeal. We hold today that appellant's noncompliance with a court order giving him 15 minutes to attend to another matter was not contumacious. Accordingly our previous opinion in this case is vacated.

Appellant, a member of the Bar of the District of Columbia, appeared in Superior Court before the Honorable Tim Murphy in courtroom 39 on May 22, 1980, at approximately 10:00 a.m. for a jury trial. He asked Judge Murphy if he could be excused for a few minutes to appear before Judge Donald S. Smith in courtroom 24 for a plea hearing in *United States v. Cunningham,* No. M–2134–80, also scheduled for 10:00 a.m. Judge Murphy agreed, but said that he wanted appellant back in his courtroom by 10:15 to start the jury trial. Appellant thanked the court and left.

Appellant entered Judge Smith's courtroom at approximately 10:07. His client's case had already been called and Ms. Cunningham was standing before Judge Smith

---

1. *In re Siracusa,* 445 A.2d 663 (D.C.1982).

with her other attorney, George Dreos.[2] Earlier, appellant had told Ms. Cunningham that he would not be present at the hearing and that Mr. Dreos would represent her on all charges. Appellant took his place beside his client at the front of the courtroom, and the plea proceeding continued.

The plea hearing lasted past 10:15. While appellant was in courtroom 24, Judge Murphy's law clerk telephoned Judge Smith's courtroom to inform appellant that he was wanted in courtroom 39 for trial. He was informed by Judge Smith's law clerk that the plea proceeding involving appellant was still in progress. Appellant testified that the hearing ended at about 10:35. While the hearing transcript indicated that the hearing concluded at 10:20, the court reporter subsequently certified that the transcript was in error; in fact the plea hearing did not terminate until 10:35. After the plea proceeding was over, appellant returned to Judge Murphy's courtroom where the jury was waiting. On his way back to the courtroom, appellant encountered Judge Murphy's law clerk who was on his way to find him.

Judge Murphy called appellant to the bench and informed him that he intended to hold him in contempt. On May 23, 1980, Judge Murphy ordered appellant to show cause why he should not be held in contempt for coming to court twenty minutes after he was directed to return.

At the show cause hearing on June 10, 1980, Judge Murphy asked appellant whether he had informed Judge Smith that he was under an obligation to return to Judge Murphy's courtroom before 10:15. Appellant replied that he did not do so because when he entered the courtroom, the plea proceeding was already underway. He also testified that he felt his presence at the hearing was necessary because he did not

know if Mr. Dreos was fully informed of the details of the case.[3]

After taking the matter under advisement, Judge Murphy found appellant guilty of criminal contempt of court. Appellant received a stern warning, but imposition of sentence was suspended. Appellant appealed and his contempt conviction was affirmed. Appellant then filed a petition for rehearing.

I

After submission of the briefs in this case, the government, *citing In re Cys,* 362 A.2d 726, 729 (D.C.1976), moved to dismiss for lack of jurisdiction on the ground that a contempt citation with no sanction imposed is not an appealable final order.[4]

In *Cys,* the defendant, who was charged with unlawful entry, claimed as cause for dismissal of the case that he had been excluded from the first offender treatment program in derogation of his rights to due process and equal protection of the laws. In order to test in the court of appeals the question of whether the allegations in the defendant's motion were insufficient to raise a constitutional claim cognizable by the trial court, the court framed the issue by citing the prosecutor, Cys, for "technical" contempt for his refusal to comply with a discovery order directing him to produce written memoranda relating to the first offender program. *Id.* at 727–28. The court did not sentence Cys, nor did it make any findings or enter any written order. On appeal, a division of this court held that "[a]bsent the imposition of a sanction, whether it be a fine, probation or term in jail, a citation for criminal contempt *in and of itself* is not a final order and raises no justiciable issue for appeal." *Id.* at 728–29 (emphasis added).

---

2. Appellant represented Ms. Cunningham on some of the charges against her, while Mr. Dreos represented her on others.

3. Appellant had worked out a plea arrangement with respect to the charges on which he represented Ms. Cunningham, and had only

communicated the substance of the agreement to Mr. Dreos through his secretary.

4. We note that, in its brief, the government expressly stated that this court had jurisdiction to consider the case, *citing Clayton v. United States,* 429 A.2d 1381 (D.C.1981).

Here, the government contends that since the trial court expressly suspended imposition of sentence after citing appellant for contempt, no sanction was imposed. Therefore, the government asserts, there is no final appealable order, and consequently this court lacks jurisdiction to consider this appeal. We disagree, for the suspension of imposition of sentence is a disposition authorized under D.C.Code § 16–710 (1981). Such a disposition terminates the case, giving the defendant a right of appeal. *Clayton v. United States, supra* note 4, 429 A.2d at 1384; *see Thomas v. United States,* 129 A.2d 852 (D.C.Mun.App.1957).

In *Clayton v. United States, supra,* the appellant entered a plea of guilty. The trial court suspended imposition of sentence and entered no formal judgment of conviction. Appellant later moved to dismiss the charges against him, relying in part on *In re Cys, supra,* by asserting that because the trial court attached no sanction or disciplinary condition to the suspension of imposition of sentence, no judgment of conviction was pronounced. We determined that since suspension of imposition of sentence was a sentencing alternative authorized under D.C.Code § 16–710 (1973) (now D.C.Code § 16–710 (1981)), the suspension of imposition of sentence was a final judgment from which a defendant could appeal. *Clayton v. United States, supra,* 429 A.2d at 1384, *citing Thomas v. United States, supra.* The absence of a formal sanction did not negate the conviction. Moreover, we distinguished *Cys,* which did not involve any disposition under § 16–710, by noting that it addressed only the issue of whether there was a right to appeal before pronouncement of sentence.

In the case at bar, as in *Clayton,* there was a disposition authorized under § 16–710. The trial court suspended imposition of sentence, "an appropriate alternative for terminating a criminal case." *Id.* This is not a case like *Cys,* where the appellant

sought to appeal before pronouncement of sentence, *i.e.,* disposition of the case. Appellant therefore is appealing from a final judgment and since his appeal was timely noted, we have jurisdiction.[5]

## II

Failure of counsel to be present in court at such times as the court requires constitutes a breach of professional duty and often causes disruption of the judicial process. Breach of this professional duty is punishable by criminal contempt. However, such an adjudication must be based on a finding that the failure to appear timely was the result of willful, deliberate or reckless disregard of professional obligations. Simple noncompliance with a court order does not meet this standard. *See In re Denney,* 377 A.2d 1360, 1363 (D.C.1977).

Siracusa's decision to remain in Judge Smith's courtroom until the conclusion of the plea was not an unreasonable choice between three equally unattractive alternatives. He could have elected to leave Judge Smith's courtroom in order to return to courtroom 24 on time. This course of action would have required the abandonment of a client as well as disrespect for Judge Smith. Alternatively he could have interrupted the plea proceeding to advise Judge Smith of his difficulty. In light of these facts, Siracusa's decision to remain in Judge Smith's courtroom does not institute a willful, deliberate or reckless disregard of professional obligation.

*Reversed.*

KELLY, Associate Judge, dissenting:

The majority's disposition of the jurisdictional issue on appeal does not differ from that of the original division opinion. *In re Siracusa,* 445 A.2d 663, 665–66 (D.C.1982). That holding was unchallenged. Rehearing by the division was granted, over my objection, presumably on the basis of a memo-

---

5. The *Cys* case is unique. We wish to make it clear that trial judges have an obligation to pronounce sentence in contempt cases. The consequences of such convictions are often severe; they should be subject to appeal as a matter of right.

randum from the Public Defender Service as amicus curiae in support of appellant's alternative petition for rehearing or for rehearing en banc. Contempt is the issue here. The case is uncomplicated; respondent's dereliction is clear—the question is whether his conduct was contumacious.

Respondent began a trial before Judge Tim Murphy and a jury on May 21, 1980. The following morning, at approximately 9:58 a.m., he asked to be excused to attend to another matter.[1] That matter was a plea hearing in the case of *United States v. Cunningham,* No. M–2104–80, set before Judge Donald S. Smith at 10:00 a.m. Respondent acknowledges that he did not arrive in Judge Smith's courtroom until 10:07, by which time his absence had been discussed at length by Judge Smith, Mr. George Dreos, Assistant United States Attorney Paul Knight and a Mr. Wecher, who represented Ms. Cunningham in yet another case set for sentencing that morning. Mr. Dreos was counsel on a multi-count felony indictment; Mr. Siracusa was counsel on a misdemeanor Bail Reform Act violation. Judge Smith was told that as far back as the time of arraignment respondent had said he would not be present at the plea hearing and that Mr. Dreos could handle the matter for him. He had so informed Mr. Knight, Mr. Dreos, Mr. Wecher and his client, Ms. Cunningham, who, when asked, was more than willing to proceed. The court continued with the pleas to one count of the felony indictment (false pretenses) and to the BRA violation, an extended proceeding during which Judge Smith, in his customary careful manner, interrogated Ms. Cunningham as to her understanding of, and her willingness to enter, the pleas.[2] At some point respondent entered the courtroom, but since he said nothing we must rely upon the court's statement at its conclusion that respondent was present and had been throughout most of the plea. A date for sentencing was agreed upon and respondent left.

The transcript of the plea proceeding, which Judge Murphy had before him at the contempt hearing, says that it concluded at 10:20 a.m. The majority writes that "the court reporter subsequently certified that the transcript was in error; in fact the plea hearing did not terminate until 10:35." This is indeed so according to an attachment to the amicus memorandum.[3] I clarify this change in the record only because I anticipate that it will come as much of a surprise to the trial judge as the unorthodox submission to this court was to me. Now it appears that a trip which took close to seven minutes from Murphy to Smith took no time at all from Smith to Murphy, respondent having reappeared for trial also at 10:35.[4]

---

1. The actual colloquy was:
   MR. SIRACUSA: Your Honor, may I be excused to go to Judge—
   THE COURT: We're just about to start your case.
   MR. SIRACUSA: Your Honor, just for a few minutes.
   THE COURT: All right. Be back by 10:15.
   MR. SIRACUSA: Thank you.

2. Ms. Cunningham had earlier pled guilty in another case and was familiar with the questions to be asked.

3. The court reporter states:
   At your request, I have examined my notes and records in the case of *United States v. J. Cunningham* heard before the Honorable Donald Smith on May 22, 1980, to determine when the plea proceedings on that date concluded and to ascertain whether my certification that they were concluded at approximately 10:20 a.m. was accurate. In checking the calendar for that date, my notation indicates unequivocally that the proceedings ended at 10:35 a.m. My certification that the proceedings terminated at approximately 10:20 a.m. had been based upon an estimation of the length of the proceedings and was in error by fifteen minutes.

4. The majority seems not to have considered a remand for Judge Murphy to weigh the effect of this late development. It surely is a fact of significance, for even the Public Defender Service, while deploring the original division holding, concedes its validity by telling us, albeit with some lack of grace, that
   Of course, had Mr. Siracusa waited 15 minutes after the completion of the matter before Judge Smith to return to Judge Murphy's court or had he lied to Judge Murphy about the duration of those proceedings, as the

The above recital is relevant only insofar as it bears on respondent's explanation of his failure to return to Judge Murphy's courtroom at the appointed hour, with its heavy emphasis on the alleged complex nature of the pleas, his lead role in arranging them, and the necessity of his presence when taken. It is suggested that respondent, faced with a conflict between a judge presiding over a trial in progress and his obligation to a client, inadvertently fell into a trap from which he could not escape. He could not abandon his client in mid-plea without being unprofessional and/or disrespectful to Judge Smith. Neither could he be so unwise as to "irritate" Judge Smith by interrupting the proceedings to explain his plight.[5] So he stayed. My guess is (again for the benefit of trial judges) that some such considerations lurk beneath the ipse dixit of the majority opinion, but who knows. It appears to me that here, as in *In re Hunt,* 367 A.2d 155, 157 (D.C.1976), "[t]he trial court properly inferred from appellant's actions and his explanation that he had deliberately and willfully substituted his own judgment for a direct order of the court even though his actions represented a good faith attempt to straighten out his conflicting obligation with two other courts." I say again that respondent's decision to give priority to Judge Smith's plea proceeding reflected a "deliberate choice, based on the assessment of the importance of the conflicting matters. This was not his choice to make." *In re Gregory,* 387 A.2d 720, 723 (D.C.1978). There is clearly sufficient evidence in this record to support a finding of a deliberate, or, at the very least, a reckless disregard of professional obligations.

I agree that there is an urgent need for mutual understanding and cooperation between judges and lawyers in the Superior Court. Understanding requires an intelligent concern for the obligations of each; cooperation presupposes flexibility in meeting those obligations. What appears to be lacking most in the manner of dealing with many of the conflicts is a discipline short of contempt which also serves to preserve the integrity of the court. The remedy is elusive, however, and is best left to the conscientious efforts of the judges of that court. I would affirm.

---

present opinion almost suggests was the case, this would be a far different—and far easier—case, and a finding of contempt *would have been clearly proper.*
  Having conceded as much, I find the professed confusion as to which particular act this court originally deemed contumacious—was it some improper action that created a *scheduling* conflict? was it a violation of a newly imposed

"actual necessity" standard?—curious indeed. Judge Murphy's contempt order, which was affirmed, might be of help.

5. It is pointed out that not even Judge Smith's clerk had such temerity.