**In re Claude W. ROXBOROUGH, Appellant.**

**No. 90–SP–228.**

District of Columbia Court of Appeals.

Submitted April 10, 1992.
Decided Aug. 17, 1995.

---

8. "Crime of violence" is defined in D.C.Code § 22–3201(f) to include kidnapping.

Claude W. Roxborough, filed a brief pro se.

No brief was filed and no appearance was entered for appellee.

Before TERRY, STEADMAN, and KING, Associate Judges.

Dissenting opinion by Associate Judge TERRY at p. 555.

PER CURIAM:

This matter is before the court on appeal from a summary contempt order and a $150.00 fine imposed against appellant, Claude W. Roxborough, an attorney, for being late for two matters in the Landlord and Tenant Branch of the Superior Court on April 5, 1989. Appellant challenges the contempt order on grounds that: (1) the evidence did not establish that his tardiness was deliberate and willful; and (2) the judge abused his discretion in relying on other incidences of tardiness before other judges in justifying the contempt finding. Because Roxborough has not provided us with a record sufficient to show trial court error, we affirm.

On April 6, 1989, Roxborough had a hearing and a trial scheduled before the Landlord and Tenant Branch of the Superior Court. On that same date, however, Roxborough scheduled a matter for 8:15 a.m. in the Prince Georges County Courthouse in Upper Marlboro, Maryland, which is approximately twenty miles from the District of Columbia courthouse. Roxborough later told the court that he completed his business in Upper Marlboro at approximately 9:10 a.m., and was on his way to the District of Columbia when his car broke down. Through the courtesy of another driver, Roxborough was taken to a gas station where he telephoned his office and reported the problem. At about 11:30 a.m., Roxborough's law partner, George Tillerson, appeared and informed the court that someone from his office had attempted to call the courthouse and report Roxborough's predicament, but for some unexplained reason, the call could not be put through to the Landlord and Tenant Branch courtroom. The judge directed Tillerson to inform Roxborough to appear in court at 2:00 p.m. and show cause why he should not be held in contempt.

At 2:00 p.m. that afternoon, Roxborough appeared before the Landlord and Tenant Court judge and apologized for his absence that morning. He recounted the reasons for his tardiness, and admitted that he was "cutting it close" by scheduling a matter in Maryland on the same day he was due in court in the District of Columbia. He maintained that, but for the car breakdown, he would have arrived at the Landlord and Tenant Branch courtroom before his cases would have been called. After hearing Roxborough's explanation, the judge held him in contempt. The record reflects that the trial court issued a formal order of contempt, presumably pursuant to Super.Ct.Crim.R. 42(a), D.C.Code § 11–944 (1989), on April 7, 1989, but that order is not part of the record on this appeal.

I.

An attorney has an obligation to avoid scheduling conflicts. *In re Siracusa*, 445 A.2d 663, 666 (D.C.1982). When an attorney's willful failure to appear in court on time for a scheduled proceeding results from a scheduling conflict, this is a breach of professional duty, which often causes disruption of the judicial process. "While breach of this professional duty is punishable by criminal contempt, such an adjudication must be based on a finding, adequately supported by evidence of record, that the failure to appear was the result of willful, deliberate or reck-

less disregard of professional obligations." *Id.* (citation omitted).

Roxborough maintains he did not willfully schedule a conflict because: (1) the Maryland matter was set for 8:15 a.m.; (2) based on experience, he estimated the Maryland matter would take about thirty minutes to conclude; (3) also based on his experience, the Landlord and Tenant Court did not begin calling cases before 10:00 a.m., and trials ordinarily did not start until about 11:00 a.m.; (4) but for the unforeseen breakdown of his car, he would have had adequate time to make the approximately twenty-mile ride from Upper Marlboro to the District of Columbia for a timely court appearance. Thus, he argues, his tardiness was not willful. Although the transcript of the April 5, 1989, proceeding is part of the record, the April 7, 1989, contempt order was not designated by Roxborough to be part of the record, and thus it is not before us.

■■■ An appellant has the duty to provide this court with a record sufficient to show that error occurred at trial. *Cobb v. Standard Drug Co.,* 453 A.2d 110, 111 (D.C. 1982). This rule applies when an attorney appeals an adjudication of contempt against him. *In re Gregory,* 387 A.2d 720, 723 (D.C. 1978); *see also Cole v. United States,* 478 A.2d 277, 283 (D.C.1984). Without a complete and accurate record, we are unable to determine the basis for the trial court's ruling or whether any error occurred. For example, we do not know whether the trial court accepted Roxborough's explanations or whether Roxborough's estimates of when he could expect his matters to be called in the Landlord and Tenant Branch were accurate. In short, we are unable to determine what the trial court found, because the appellant has not provided us with the contempt order. Accordingly, because appellant failed to provide this court with a record showing trial court error, the judgment of contempt is

*Affirmed.*

TERRY, Associate Judge, dissenting:

My colleagues conclude that appellant, by omitting the trial court's order of contempt from the record on appeal, has failed to present us with "a record sufficient to show affirmatively that error occurred." *Cobb v. Standard Drug Co.,* 453 A.2d 110, 111 (D.C. 1982) (citations omitted). I agree that appellant's case might well be stronger if the contempt order were before us. What the record does contain, however, is a transcript of the show cause hearing. That transcript convinces me that appellant lacked the requisite state of mind to be convicted of contempt, and for that reason I would reverse the judgment. Since my colleagues conclude otherwise, I respectfully dissent.

D.C.Code § 11–944 (1989) empowers judges of the Superior Court to "punish for disobedience of an order or for contempt committed in the presence of the court." This court has repeatedly held that if an attorney fails to appear in court when he or she is obliged to do so, the attorney's absence is conduct occurring "in the presence of the court" and may be punishable as contempt. *See, e.g., In re Gregory,* 387 A.2d 720, 722 (D.C.1978); *In re Hunt,* 367 A.2d 155, 156 (D.C.1976), *cert. denied,* 434 U.S. 817, 98 S.Ct. 54, 54 L.Ed.2d 72 (1977); *In re Rosen,* 315 A.2d 151, 152–153 (D.C.), *cert. denied,* 419 U.S. 964, 95 S.Ct. 224, 42 L.Ed.2d 178 (1974). Furthermore, Superior Court Criminal Rule 42(a) states that such a contempt may be punished "summarily," that is, without notice and hearing. We have also held, however, that an attorney's absence must be willful in order to constitute contempt, and we have reversed contempt convictions when the record fails to show the requisite willfulness. *E.g., In re Siracusa,* 458 A.2d 408 (D.C.1983); *In re Thompson,* 448 A.2d 247 (D.C.1982); *In re Denney,* 377 A.2d 1360 (D.C.1977); *In re Nesbitt,* 313 A.2d 576 (D.C. 1973); *accord, Sykes v. United States,* 144 U.S.App.D.C. 53, 55, 444 F.2d 928, 930 (1971).

"The offense of contempt consists of a contemptuous act and a wrongful state of mind ... [each of which] must be proved beyond a reasonable doubt." *In re Gorfkle,* 444 A.2d 934, 939 (D.C.1982) (citations omitted). There can be no question that an attorney's unexcused failure to appear in court on time for a scheduled hearing or trial is a contemptuous act. *Id.* (citing cases); *In*

**556**

*re Gregory, supra,* 387 A.2d at 723. It is also "a breach of professional duty that is frequently disruptive of the judicial process." *In re Thompson, supra,* 448 A.2d at 248 (citations omitted). But that is not enough to sustain a contempt conviction. The record must show, in addition, "that the failure to appear timely was the result of willful, deliberate, or reckless disregard of professional obligations." *In re Siracusa, supra,* 458 A.2d at 410. That is what I believe is lacking here.

The requisite state of mind for criminal contempt has been variously characterized as willfulness,[1] contumacious intent,[2] or (in the case of an attorney) deliberate or reckless disregard of one's professional obligations[3] or flagrant disrespect for the court.[4] This court has recognized that " '[t]he requisite intent may of course be inferred if a lawyer's conduct discloses a reckless disregard for his professional duty.' " *In re Gorfkle, supra,* 444 A.2d at 940 n. 4 (quoting *Sykes, supra,* 144 U.S.App.D.C. at 55, 444 F.2d at 930). What the record in this case shows, however, is at worst extremely poor judgment combined with unexpected misfortune.

Scheduling two hearings back to back in courthouses twenty miles apart is flirting with disaster, as this case plainly demonstrates. "An attorney has a clear obligation to avoid scheduling conflicts which disrupt the efficient administration of the judicial system." *In re Gratehouse,* 415 A.2d 1388, 1390 (D.C.1980) (citation omitted). On the other hand, if appellant's car had not broken down on the road from Upper Marlboro to downtown Washington, he may well have made it to court on time, or at least before his cases were actually called. Because the sudden breakdown of appellant's car was beyond his control, I find the requisite state of mind lacking. On the record as a whole, I cannot conclude that appellant "deliberately or recklessly disregarded his obligation to the court, or that he intended any disrespect

---

**1.** *E.g., In re Gregory, supra,* 387 A.2d at 722.

**2.** *E.g., In re Nesbitt, supra,* 313 A.2d at 578; *see Sykes, supra,* 144 U.S.App.D.C. at 55, 444 F.2d at 930 ("An essential element of [criminal contempt] is an intent, either specific or general, to commit it").

for the court." *Sykes, supra,* 144 U.S.App. D.C. at 55, 444 F.2d at 930.

Appellant should not have arranged his schedule in such a way as to require his presence in two places, twenty miles apart, at almost the same time. What he did was careless; it was stupid; it was extremely foolish. He should never, never do it again. But I cannot discern in his behavior the willfulness necessary to sustain a conviction of criminal contempt. I would therefore reverse appellant's conviction.

---

**3.** *In re Siracusa, supra,* 458 A.2d at 410.

**4.** *In re Schwartz,* 391 A.2d 278, 282 (D.C.1978).