Anthony T. WILLIAMS, Appellant,

v.

UNITED STATES, Appellee.

Nos. 87–788, 87–1006.

District of Columbia Court of Appeals.

Argued Oct. 5, 1989.

Decided June 26, 1990.

---

Laura L. Rose, Criminal Justice Clinic, Georgetown University Law Center, for appellant.

Sharon M. Collins, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Michael W. Farrell, Asst. U.S. Atty. at the time the brief was filed, and John R. Fisher, Helen M. Bollwerk, and Richard L. Edwards, Asst. U.S. Attys., were on the brief, for appellee.

Before ROGERS, Chief Judge, and NEWMAN and FERREN, Associate Judges.

FERREN, Associate Judge:

 Appellant—on trial for violating the Bail Reform Act (BRA), D.C.Code § 23–1327 (1989)—was found guilty of criminal contempt for arriving in court one hour and fifty minutes late for the second day of this trial.[1] Appellant contends there was insufficient evidence to support the court's finding that he willfully disregarded his duty to appear on time. Because the basis for the trial court's ruling is not clear enough for our review, we remand the record for more specific findings of fact and conclusions of law based on the hearing already completed.[2]

---

1. The criminal contempt hearing was held on April 22, 1987, the third day of trial. The trial court sentenced appellant to 60 days in prison. At the underlying trial itself, a jury found appellant guilty on one count of violating the BRA. On June 3, 1987, the court sentenced appellant to 180 days for the BRA charge, to run consecutively to the contempt sentence; suspended execution of the sentence; and ordered appellant placed on probation for one year. The record is unclear as to whether the court actually intended to suspend execution of the remaining 18 days of appellant's contempt sentence, but, regardless, appellant was released from custody on June 3, 1987.

2. Appellant also appeals his BRA conviction on two grounds: (1) insufficient evidence and (2) violation of fifth and sixth amendment rights by denial of appellant's pretrial motion for access

## I.

After the first day of trial, the deputy marshal told appellant he must appear the next day at 10:00 a.m. When court convened the next day, appellant was not present. His counsel said she did not know where he was and requested a twenty-four hour continuance to try to contact him. Instead, the court passed the case until 2:00 that afternoon. When court resumed, the court noted that appellant had appeared at 11:50 a.m. The court then scheduled a hearing the next day for appellant to show cause why he should not be held in contempt for his tardiness. At the close of the day's proceedings, the court decided to hold appellant without bond pending completion of the trial.

■ The BRA case was submitted to the jury the next day, and, thereafter, the court promptly conducted a contempt proceeding pursuant to Super.Ct.Crim.R. 42(b).[3] At the hearing, appellant testified without contradiction that on April 20, the

night before his second day of trial, he slept at a friend's house.[4] He said that there was no telephone or alarm clock in the house and that he did not wear a watch. He stated that he did not inform the others in the house that he needed to get up at a particular time because he did not want anyone to know that he had to be in court. He further testified that he went to bed at 10:30 that night, that he had not slept much the night before, and that he woke up at 10:30 in the morning on the day he was late to court.

Appellant then testified that when he awoke, he looked for a phone number on the paper the court had given him but found none. He also testified that he did not have the money to make a phone call from a phone booth but, had he known what number to call, he would have called from a friend's house. He added that he saw his cousin driving up the street and asked him for a ride. His cousin was in a rush and would not provide the ride, but he did give appellant a dollar to take the bus.

to tape recordings of his arraignment proceedings. We find no merit in either contention. Accordingly, we affirm appellant's conviction on the BRA charge.

As to the first contention, we conclude that the arresting officer's identification of appellant as the suspect he arrested on November 12, 1986, coupled with the signature of an "Anthony Williams" on the release order signed after the arraignment proceeding on November 13, 1986, comprised sufficient evidence for a reasonable jury to find that appellant was present on November 13, 1986, when the court ordered him to reappear on December 4, 1986. *Patterson v. United States,* 479 A.2d 335, 337–38 (D.C.1984) (government entitled to all reasonable inferences); *United States v. McKinley,* 158 U.S.App.D.C. 280, 282, 485 F.2d 1059, 1061 (1973) (strong presumption of regularity attaches to all court proceedings).

As to the second contention, we note that apparently the court never ruled on appellant's ex parte motion to listen to the courtroom tapes of his arraignment proceeding. The record, however, does contain a memorandum from Chief Judge Fred B. Ugast stating that "Court policy prohibits such use of these recordings. Defense counsel should proceed with a request for a transcript of the proceedings in question." Appellant never made such a request and has not satisfactorily explained why a transcript should not be requested and reviewed before a defendant is allowed to demonstrate a basis for requesting the underlying tape recording.

3. Appellant, in his brief, characterizes the proceeding as a "summary hearing." That characterization ignores the fact that there was "notice ... given orally by the judge in open court in the presence of the defendant ... by an order to show cause" one day in advance of the contempt hearing, in conformity with Super.Ct. Crim.R. 42(b), and that the judge did not sign an order of contempt "recit[ing] the facts" or certify that "the conduct constituting the contempt ... was committed in the actual presence of the Court," as would be required by Super.Ct. Crim.R. 42(a). *See Warrick v. United States,* 528 A.2d 438, 443–44 (D.C.1987); *In re Brown,* 320 A.2d 92, 92 (D.C.1974). On the other hand, the government did not introduce evidence that appellant was late for court; the record contains only the trial court's show cause order charging the same and appellant's testimony in response. The court's failure to require the formal introduction of evidence proving the elements of contempt is more consistent with a Rule 42(a) summary proceeding. On balance, however, we conclude that the trial court treated the proceeding as a non-summary contempt hearing conducted pursuant to Rule 42(b), not a summary contempt hearing under Rule 42(a). Appellant has not claimed any irregularity in the proceeding, and we do not decide any such issue.

4. At the trial on the BRA charge, a psychologist, who had examined appellant, testified to his understanding that appellant was living in a car by himself at the time he was arrested.

Appellant then got on the bus and, according to his testimony, came directly to court. Appellant testified that he did not intend to delay the trial or to cause the court any inconvenience.

At the close of appellant's testimony, his counsel argued that there was no evidence of the willful intent needed to sustain a conviction for criminal contempt. The court responded by stating:

> I think the one sort of case the Defendant should make sure he appears on time is for a case where he's charged with failure to appear.
>
> \* \* \* \* \* \*
>
> It's absolutely plain that the Defendant was warned to be in court, was told to be in court, told to be in court at ten ,o'clock. He testified that he fully understood what that meant, that he was to be back here at ten o'clock in court for his trial and he didn't make it, showed up some two hours late.
>
> The fact that he just overslept does not excuse his actions. That's a wilful failure to appear. He's responsible to get up. He didn't make any effort to have himself here at ten o'clock. Ten o'clock certainly isn't the break of day. He certainly was able to get here.
>
> I find beyond a reasonable doubt that Mr. Williams is in wilful disobedience of this Court in hindering the administration of justice in showing up two hours late for his failure to appear trial.

In sentencing appellant to sixty days for his tardiness, the court added:

> It seems to me that when you're on trial for failure to appear the one thing you should be absolutely clear on is you make your court appointments and you make your court appointments promptly.
>
> And it just seems outrageous that when you're on trial for failure to appear that you don't show this Court the courtesy of coming in on time. You caused

delay here. We had fourteen jurors waiting. My morning calendar just couldn't proceed without you, and I think a sixty day penalty is appropriate in these circumstances.[5]

## II.

 In order to hold a defendant in contempt for appearing late, a court must find that the defendant behaved with willful, deliberate, or reckless disregard of the obligation to appear on time. *In re Kirk*, 413 A.2d 928, 930 (D.C.1980); *In re Denney*, 377 A.2d 1360, 1363 (D.C.1977); *Sykes v. United States*, 144 U.S.App.D.C. 53, 55, 444 F.2d 928, 930 (1971). We may set aside the trial court's judgment only if there is an error of law or if the judgment is plainly wrong or without evidence to support it. D.C.Code § 17–305(a) (1989); *see also In re Thompson*, 454 A.2d 1322, 1323 (D.C.1982).

### A.

 Our decisions addressing findings of contempt for tardy court appearances have almost all concerned attorneys who were late to court because of scheduling conflicts.[6] Our only contempt case that involves oversleeping is *In re Marshall*, 549 A.2d 311 (D.C.1988). In *Marshall*, the appellant was an attorney who awakened at 1:00 p.m. feeling nauseous and dizzy on a day he had been scheduled to appear in court. He called the court, spoke with the courtroom clerk, and rescheduled his appearance. In a previous case in which Marshall had appeared before the same judge, he had been late twice, once because he overslept. After a hearing, the trial court found Marshall in contempt, inferring the requisite willfulness "from Marshall's recklessness in not having an alarm clock and from his history of missing several scheduled court appearances in the past." *Id.* at 312. We affirmed the conviction.

---

**5.** The six above-quoted paragraphs represent the court's entire contempt ruling.

**6.** *See, e.g., In re Siracusa*, 458 A.2d 408 (D.C. 1983); *In re Thompson*, 454 A.2d 1322 (D.C. 1982); *In re Gratehouse*, 415 A.2d 1388 (D.C.

1980); *In re Denney*, 377 A.2d 1360 (D.C.1977); *In re Schaeffer*, 370 A.2d 1362 (D.C.1977); *In re Hunt*, 367 A.2d 155 (D.C.1976), *cert. denied*, 434 U.S. 817, 98 S.Ct. 54, 54 L.Ed.2d 72 (1977); *In re Nesbitt*, 313 A.2d 576 (D.C.1973).

The government argues that *Marshall* is applicable in these same two respects: like attorney Marshall, appellant failed to take steps—not even "the very ordinary precaution of setting an alarm"—to ensure that he would be able to get to court on time; and also, like Marshall, appellant had a prior history of either tardy or missed court appearances. These arguments ignore important distinctions between the two cases. As to appellant's alleged failure to take necessary steps to be in court on time, appellant presented evidence explaining his lateness which, if credited,[7] the court may or may not have considered reckless behavior. For example, as far as we can tell, appellant's failure to set an alarm was not a conscious decision, as it was in *Marshall, see id.* at 314. Rather appellant, who apparently did not own an alarm clock (or watch), testified that he searched unsuccessfully for an alarm clock in the friend's house where he was sleeping. Accordingly, appellant's failure to set an alarm may be attributable to a lack of resources, not necessarily to recklessness.

As to appellant's alleged history of tardy or missed court appearances, this was the first time appellant had been late for his trial or for any other proceeding before this judge, in contrast with the situation in *Marshall.* Nor did appellant have any prior conviction for failure to appear.[8] As for the government's contention that the court properly considered "the fact that appellant's tardy appearance occurred in the middle of a trial for failure to appear," it is questionable whether there was sufficient similarity between the facts underlying the BRA charge (where defendant failed to appear at all and was brought in six days later on a bench warrant) and the allegedly contemptuous incident (where appellant overslept and appeared voluntarily less than two hours later) to establish that the lateness was part of a pattern. *Marshall,* therefore, is not dispositive here.

We cannot agree, however, with appellant's argument that his conviction is reversible as a matter of law for insufficient evidence. The court may well have believed, for example, that appellant's failure to ask anyone to wake him up constituted reckless disregard of his duty to appear in court at 10:00 a.m. It is not readily apparent why appellant, knowing he did not have an alarm, should not have asked for help, with or without revealing why he needed to get up by a particular time. We therefore perceive at least one possible basis, supported by the evidence, for ruling that appellant recklessly disregarded his duty to appear in court.

### B.

But, there is a problem. Because of the brief manner in which the trial court responded to appellant's testimony, we cannot determine with any certainty which of appellant's acts or omissions formed the basis for the court's finding of willfulness. Although there may be a sound basis for the court's decision, there are other possible bases—on which the trial court may have relied—that would be legally insufficient for a contempt ruling. For example, in finding "wilful failure to appear" from the fact that appellant "just overslept" and "didn't make any effort to have himself here at ten o'clock," the court may have been focusing solely on appellant's failure, as in *Marshall,* to set an alarm—an insufficient basis for finding willfulness on the record here. If this were the court's reasoning, the contempt ruling would be "without evidence to support it." D.C. Code § 17–305(a) (1989).

On the other hand, and more significantly, the trial court may have committed an "error[ ] of law." *Id.* At oral argument

---

7. The trial court neither explicitly credited nor discredited appellant's testimony. The court's only direct reference to appellant's testimony was this statement: "The fact that he just overslept does not excuse his actions." We take the statement to mean the court either believed or assumed the truth of appellant's testimony that he overslept. For purposes of this appeal we

shall assume the truth of appellant's other testimony in the absence of any explicit trial court finding to the contrary.

8. Appellant had been charged with violating the BRA once before, but the charge was dropped as part of a plea agreement.

on appeal, the government argued, by analogy to BRA cases, that the fact appellant had received proper notice but failed to appear on time suggests in itself a reasonable inference that appellant acted willfully. *See* D.C.Code § 23–1327(b) (1989) ("Any failure to appear after notice of the appearance date shall be prima facie evidence that such failure to appear is willful."); *Raymond v. United States*, 396 A.2d 975 (D.C.1979). Even if we assume, however, that in a criminal contempt case the trial court may draw an inference of willfulness solely from a failure to appear after notice, *see Swisher v. United States*, 572 A.2d 85, 89 n. 9 (D.C.1990), this inference may not be converted to a conclusive presumption; the defendant must have an opportunity to rebut. *See id.* at 92 (when trial judge cannot ascertain all relevant facts "through his or her own senses, the contemnor must be afforded a reasonable opportunity to explain his [or her] absence"); *cf. Raymond*, 396 A.2d at 977–78 (BRA does not shift burden of proof or create presumption of willfulness but merely creates permissible inference).

If a defendant's testimony tends to rebut the inference of willfulness, we believe the trial court must address that testimony before holding the defendant in contempt; otherwise, the record will not reflect why the defendant's rebuttal was insufficient. Here, appellant testified that he had looked for an alarm clock in the house in which he was staying, but had not found one, and that he had gone to bed at 10:30 p.m., a relatively early hour. He testified further that, upon discovering he had overslept, he looked for the court's phone number on the court papers and then immediately attempted to obtain transportation to the court. While, even if credited, this testimony does not necessarily preclude a finding of recklessness or willfulness, it does tend to rebut any initial adverse inference created by the failure to appear and, effectively, to shift the burden of production back onto the trial court-complainant. In order to find appellant's lateness willful beyond a reasonable doubt, therefore, the court should have either discredited appellant's testimony explicitly or credited some or all of appellant's testimony while pointing to specific acts or omissions justifying a finding of willfulness or recklessness.

Given the meager record before us, however, we are concerned that the trial court instead may have conclusively presumed willfulness from failure to appear after notice. The court found that appellant had notice ("It's absolutely plain that the Defendant was warned to be in court, was told to be in court, told to be in court at ten o'clock. He testified that he fully understood what that meant. . . ."). The court further found that appellant had failed to appear punctually ("he was to be back here at ten o'clock in court for his trial and he didn't make it, showed up some two hours late"). The court then summarily ruled that appellant had acted willfully. ("The fact that he just overslept does not excuse his actions. That's a wilful failure to appear."). This ruling suggests that the court either (1) equated appellant's oversleeping with willfulness—a conclusion that would be far from self-evident on this record—or (2) ignored appellant's testimony altogether because the court believed it could conclusively presume willfulness from failure to appear. The first possibility affords inadequate explanation; the second possibility is legally untenable.

We acknowledge that, until today, our caselaw has not imposed an obligation on trial courts to make specific findings of fact in all non-summary criminal contempt cases tried before the judge who initiated the contempt proceedings.[9] Indeed, in most criminal cases tried without a jury, the trial court is required to make specific

---

9. Super.Ct.Crim.R. 42(b), provides, in part: "If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent." Non-summary contempt proceedings involving charges other than disrespect to or criticism of a judge may be conducted by the same judge who initiated the charges. Appellant has not contended that his failure to appear in court on time showed the kind of disrespect to the judge that entitled him to a hearing before a different judge, and we do not decide this issue.

findings of fact only upon request. Super. Ct.Crim.R. 23(c) provides in relevant part:

> *Trial without a jury.* In a case tried without a jury the Court shall make a general finding and shall in addition, on request made before the general finding, find the facts specially. Such findings may be oral.

As this case and others demonstrate, however, a lack of specific trial court findings can prevent an appellate court from effectively reviewing the verdict, and thus may warrant a remand for more specific findings despite court rules to the contrary. *See, e.g., Staton v. United States,* 466 A.2d 1245, 1253 (D.C.1983) (remanding record for further findings on issue of voluntariness of confession, despite fact that Super. Ct.Crim.R. 47–I(g) does not require court to state findings on pretrial motion in criminal proceeding).

We are particularly concerned about those criminal contempt cases in which the same trial judge acts not only as complainant, but also as finder of fact and judge of the law. The need for appellate review is enhanced when a trial judge performs these ostensibly conflicting roles. Perhaps it is because of the dangers inherent in such multiple roles that the trial judge in a summary contempt proceeding, under Rule 42(a), not only must certify that the contemptuous conduct occurred in the "actual presence" of the court, but also must "recite the facts" in the order of contempt "signed by the judge and entered of record." Super.Ct.Crim.R. 42(a); *see Warrick v. United States,* 528 A.2d 438, 443–44 (D.C.1987). Possibly the trial court could have conducted this case summarily under Rule 42(a), supplying the written findings of fact required by that rule. *But see Swisher,* 572 A.2d at 94 (suggesting several alternatives as preferable to summary adjudication of contempt). Whether the court could have properly done so or not, we see no reason why the fact-finding requirement should be relaxed simply because the judge chose to conduct a non-summary proceeding under Rule 42(b) the next day. In a Rule 42(b) proceeding, the apparent, if not actual, danger of conflicting roles will still be there when the trial court acts as prosecutor, judge, and jury.

■ Because of this appearance problem, therefore, we invoke our supervisory power over the administration of criminal justice in the District of Columbia, *see In re F.G.,* 576 A.2d 724, 725 & n. 1 (1990) (en banc); *In re Kelley,* 433 A.2d 704 (D.C. 1981) (en banc), and conclude that from now on, to assure fairness in non-summary criminal contempt cases tried by the same judge who initiated the contempt charges, the trial court must make specific findings of fact and conclusions of law responsive to the testimony offered, regardless of whether a request for such findings is made. Rule 23(c) may not be invoked to sustain a more conclusory disposition.

In sum, although the record in this case may afford a basis for finding a willful or reckless failure to appear, the trial court's summary references to appellant's testimony not only fail to assure us that the court selected a proper basis for its ruling but also suggest a serious possibility that the court chose an improper basis for holding appellant in contempt. Because we therefore cannot say whether the trial court did or did not lawfully rule, we apply our new ruling and remand the record for specific findings of fact and conclusions of law sufficient for our review.

### III.

Without question, punctuality is essential to a functioning court system, and criminal contempt is a necessary sanction to help courts assure the orderly administration of justice. This decision does not compromise a defendant's obligation to report to court on time. Rather, it affirms the responsibility of a trial judge in non-summary criminal contempt cases over which that judge presides to address the testimony given and to articulate clearly the grounds for the ruling. A trial judge may discredit the testimony of a defendant who appears late in court, even one who has never been late before, and find that the lateness was willful, deliberate, or reckless. The judge may not, however, create a conclusive presumption of willfulness merely from the fact

that there was notice to appear at a time certain and the defendant failed to do so.

*Affirmed in part*[10] *and remanded in part.*

NEWMAN, Associate Judge, concurring:

I have long held the view that trial judges should make findings of fact and conclusions of law on most, if not all, of the contested evidentiary hearings they hold. Thus, I join wholeheartedly in the rule we announce today requiring specific findings of fact and conclusions of law in criminal contempt cases. I agree that under this new rule the trial court's findings were inadequate to support appellant's contempt conviction.