**In re Nina KRAUT, Appellant.**

**No. 88–1108.**

District of Columbia Court of Appeals.

Argued April 10, 1990.
Decided Oct. 4, 1990.

John W. Karr, with whom William G. McLain, Washington, D.C., was on the brief, for appellant.

Mary B. Murphy, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, and Helen M. Bollwerk, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before FERREN and STEADMAN, Associate Judges, and KERN, Senior Judge.

FERREN, Associate Judge.

The trial judge summarily convicted attorney Nina Kraut of criminal contempt of court. Super.Ct.Crim.R. 42(a).[1] He cited

---

1. Super.Ct.Crim.R. 42(a) provides:

*Summary Disposition.* A criminal contempt may be punished summarily if the judge certi-

three reasons: (1) Kraut repeatedly interrupted the judge; (2) in seeking to withdraw from representing one of two co-defendants because of a conflict, Kraut refused the judge's request to provide "the necessary information" in writing, including her fee arrangement with the client, so the court could "determine possible CJA eligibility" for appointment of counsel; and (3) she referred to this request as "absurd." Three days after orally holding Kraut in contempt and fining her $250, the judge filed a written "summary contempt ruling" which both certified that the contemptuous conduct "was committed in the actual presence of the Court" and recited the facts underlying the earlier judgment, as required by Rule 42(a), *supra* note 1. Within thirty days of that filing, Kraut noted her appeal, arguing that the evidence was insufficient for conviction.

A motions division of this court, in an unpublished order, sustained the timeliness of Kraut's notice of appeal filed thirty-one days after the hearing but only twenty-eight days after the trial court filed its written ruling. *See* D.C.App.R. 4(b)(1) (requiring filing of notice of appeal "within thirty days after entry of the judgment or order from which the appeal is taken"). We have revisited this issue. *See District of Columbia v. Trustees of Amherst College,* 499 A.2d 918, 920 (D.C.1985) (motions division's denial of motion to dismiss, without explicitly stating denial is "with prejudice," does not bar subsequent merits division from reconsidering denial). We conclude that the thirty-day appeal period does not begin until all the requirements of Rule 42(a) have been met. Because Kraut filed her appeal twenty-eight days after the required Rule 42(a) certification and recital of facts were entered of record, see *supra* note 1, her appeal was timely filed.

As to the merits, we conclude the record does not support the trial judge's finding that Kraut refused to supply all the "necessary information" requested by the judge. Accordingly, because the judge cited three grounds for contempt, because the judge indicated that all three were integral to his ruling, and because one of them fails for lack of evidentiary support, we must reverse the conviction and order dismissal of the charge.[2]

### I.

On July 26, 1988, appellant Kraut represented two criminal defendants at a status hearing in Superior Court: Prissie Williams–Godfrey (also known as Delores Blair) and Tobey Whitted. Three separate cases were pending against Williams–Godfrey; one was pending against Whitted. The government announced it would be willing to dismiss the charges against Whitted if the court granted its recently-filed motion to consolidate the three cases against Williams–Godfrey. Kraut immediately interjected that her dual representation now created a conflict of interest: as counsel to Williams–Godfrey, she intended to oppose the motion to consolidate, but, in doing so, she would be acting against the interests of Whitted. As a result, she concluded she no longer could represent them both. She asked Judge Wolf to grant her leave to withdraw from Whitted's case and to appoint counsel to represent him. The judge agreed that Whitted needed separate counsel, and he began to consider what steps he should take before he could appoint counsel.

At this juncture, Judge Wolf and Kraut engaged in the following discussion of Kraut's fee arrangement with her two clients:

fies that he [or she] saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the Court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

2. Appellant also argues that the judge should have disqualified himself from hearing the contempt charge because it involved "disrespect to or criticism of a judge," Super.Ct.Crim.R. 42(b), relying on dicta in *In re Rosen,* 315 A.2d 151, 153 (D.C.) (per curiam), *cert. denied,* 419 U.S. 964, 95 S.Ct. 224, 42 L.Ed.2d 178 (1974) and on the "embroilment" theory in *United States v. Meyer,* 149 U.S.App.D.C. 212, 221–29, 462 F.2d 827, 836–44 (1972). We need not decide this issue because we reverse on other grounds.

THE COURT: Well, Ms. Kraut, presumably you would be returning a fee to Mr. Whitted.

MS. KRAUT: Well the fees are—they're sort of combined, Your Honor.

THE COURT: Well, I think you ought to set it forth in a motion.

MS. KRAUT: Set what forth in a motion?

THE COURT: Your fee arrangements, because I don't know whether he qualifies for free legal—

MS. KRAUT: Well, if he could be interviewed, first of all, and secondly the Court—

THE COURT: No, no, no—now wait a minute, Ms.—

MS. KRAUT: Well, the Court already appointed a court-appointed lawyer for Mr. Whitted in another case; there's an assault case that I think is pending, or I don't know whether it's been disposed of or not, I am not representing him. Oh, I know what happened, Mr. Reilly is representing him on that as the Court will recall.

THE COURT: You see Ms. Kraut, this is the very problem that your joint representation creates and shouldn't create.

MS. KRAUT: Well the Court went through an inquiry—

THE COURT: Let me finish, let me finish. Yeah, okay—

MS. KRAUT: —and everything was fine as far as the substantive offense is concerned, there are no conflicting defenses.

THE COURT: Let me finish. Right now, you have eliminated the free representation of Mr. Whitted in this case.

MS. KRAUT: Yes; free for the Court, you mean.

THE COURT: And you have short-circuited the CJA process in this case for him by entering a retained appearance.

MS. KRAUT: That's correct. I don't know about short-circuited, I don't know what the Court means by that.

THE COURT: Now, on that basis, I have to assume that he had enough money to hire counsel—

MS. KRAUT: He did not, somebody paid for him.

THE COURT: Let me finish.

MS. KRAUT: I'm telling the Court right now.

THE COURT: Let me finish.

MS. KRAUT: Fine.

THE COURT: I have to assume that he had enough money or arrangements to hire counsel in this case, and that you were paid.

MS. KRAUT: I was not by Mr. Whitted, and in fact I have not been paid by anybody on behalf yet of Mr. Whitted.

THE COURT: Would you stop interrupting.

MS. KRAUT: If the Court—

THE COURT: Stop it. If you do it again, I'm going to hold you in contempt of Court.

MS. KRAUT: Yes, Your Honor.

THE COURT: I will give you a chance to be heard.

MS. KRAUT: Thank you.

THE COURT: I am tired of your continuous interrupting.

MS. KRAUT: Yes, Your Honor.

THE COURT: I therefore require under the CJA standards that you file a written motion asking to be relieved under these circumstances and setting forth in full and in writing your fee arrangement with him.

MS. KRAUT: Very well.

THE COURT: So that I understand that he is entitled to a free lawyer. And I will not accept oral representations in this matter right now.

MS. KRAUT: All right, may I speak?

THE COURT: In a moment. And I want a financial statement from him?

MS. KRAUT: Whose financial statement?

THE COURT: Mr. Whitted.

MS. KRAUT: Well what form do you want?

THE COURT: That's your problem, you do it, you're his counsel.

MS. KRAUT: The Court is asking for it, the Court is asking for a financial statement—

**1308**

THE COURT: You review the CJA guidelines and find out.

MS. KRAUT: I'm not going to go through—I am not going to spend my time, I am sorry.

THE COURT: Like heck, you are not when you are retained counsel in this case.

MS. KRAUT: I am not going to spend my time trying to make heads or tails of the CJA standards; I am sorry, I'm just not going to do that.

THE COURT: Would you like to repeat that.

MS. KRAUT: I said I can't possibly, I am not an accountant, I don't know how they work down there. I am not going to waste my time—

THE COURT: They are appended to the rules of this Court.

MS. KRAUT: It's gobbledegook to me. I'm not an accountant and I'm not good at that kind of stuff, financial stuff. I have my own accountant to deal with my financial statements—

THE COURT: Then you get him to do it.

MS. KRAUT: I'm not going to get him or her to do it; that means it's an extra expenditure for me. I think this is getting a little blown out of proportion because for some reason the Court thinks that somebody's trying to put something over on this Court. If the Court would allow me to make some representations. Would the Court allow me to do that?

THE COURT: No, I want it in writing.

MS. KRAUT: I thought the Court said you would allow me to speak about this.

THE COURT: I will allow you to speak on what I want you to speak on. Now just let me finish this, Ms. Kraut.

MS. KRAUT: This is absurd.

THE COURT: Ms. Kraut.

MS. KRAUT: Yes.

THE COURT: I do not appreciate those comments, and every time you come before me they are made. And I have warned you repeatedly.

MS. KRAUT: Yes, Your Honor.

[Pause.]

I will be happy if the Court wishes to put in writing—

THE COURT: I am not asking for any comment from you yet, I'm trying to think whether the time has finally come to hold you in contempt of Court for telling me that I'm absurd.

MS. KRAUT: I didn't say that, Your Honor.

THE COURT: You said this is absurd. And you tell me, Judge, I am not going to do what you want—

MS. KRAUT: I tried—

THE COURT: —and I do not appreciate that. And you are continually interrupting me, every time you come before me. Every time we go through this, Ms. Kraut.

MS. KRAUT: I don't—

THE COURT: And I am counting to ten, and I don't want to hear anything from you, right now.

MS. KRAUT: All right.

THE COURT: I may just leave the bench and decide what I'm going to do, I'm sick of it. And I have repeatedly warned you about it.

[Pause.]

I'm going to take a ten-minute recess.

When the judge returned to the bench, he immediately summoned Kraut, and they had the following exchange:

THE COURT: I hereby adjudicate you in summary contempt of this Court for repeatedly interrupting, having many, many, times been warned not to do so.

MS. KRAUT: Um-hmm.

THE COURT: I hereby also adjudicate you in summary contempt of Court—I don't mean this is separate summary contempt, but in addition, for saying you refuse to do that, you will not do that, and further for saying to the Court disrespectfully, in addition to all these other matters, this is absurd.

MS. KRAUT: Well, may I—

THE COURT: You are hereby adjudicated in summary contempt of Court for those remarks, having previously been repeatedly warned by me for such similar disrespectful conduct. I will now hear from you before I impose sentence.

Before Kraut had an opportunity to speak, however, Judge Wolf informed her that he was also citing her for two additional counts of contempt of court for alleged conduct which did not occur in his presence. The judge stated that he would issue an order to show cause why Kraut should not be held in contempt of court for those two separate incidents.[3] At this point, Judge Wolf gave Kraut an opportunity to speak.

Kraut said that she had meant no disrespect to the court in saying its ruling was absurd; she merely had wanted to tell the judge that no money was involved in her representation of Whitted and that Whitted had already been deemed eligible for an appointed lawyer in a different proceeding. Judge Wolf then told Kraut that the reason he had not allowed her to speak on those matters was because he had wanted, and still wanted, the information in writing. Kraut replied, "And I intend to put it in writing and I said I would put it in writing." The judge reminded Kraut that she had said "I refuse." She replied that when she had said she refused, she had meant that she would not "go through some sort of process that the CJA office goes through" because she believed it would be costly, unfair, and unnecessary. She apologized for repeatedly interrupting the judge, again stating that she meant no disrespect. Judge Wolf then stated:

All right, Ms. Kraut, I don't think you know what is disrespectful, and it is time you learned.... [T]here is no excuse for repeatedly interrupting the Court when you have been warned by me as many times as you have. I can go back through the record since you have been appearing before me, since this current assignment and probably find that occurring in seventy percent of the appearances, and the warnings began a couple of months ago.

Your saying "I refuse to do that," and "that is absurd" is completely disrespectful. And the disrespect has been to Court employees, to the Court, to oppos-

ing counsel, and has been repeated, unremitting and unforgivable; and I have reached the point where I have given you repeated warnings. It is therefore the judgment of this Court that for this summary contempt you are to pay a fine of $250, failing which you will serve ten days in jail.

Now frankly, I don't know whether this requires a special proceeding case number for summary contempt or not; I suspect that it does. Mr. Barby will find out for me, and it will be entered on record in the appropriate fashion by me probably as soon as I can get to it. Obviously, there has to be something in writing in this regard. And since it is summary contempt that has been committed precisely in my presence, I obviously cannot create the paper trail as I go along, but it will be done.

Shortly thereafter, the court re-called the cases of Williams–Godfrey and Whitted and directed Kraut to file, ex parte, both a full explanation of her fee arrangement with Whitted and a financial statement from Whitted—which did not "have to be detailed" and did not "have to match the CJA"—indicating whether he qualified for "free legal representation, having had retained counsel in this case."

On July 29, 1988, Judge Wolf filed the following "criminal contempt ruling," which he signed and dated July 28:

Pursuant to Superior Court Criminal Rule 42(a), "criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court." This ruling so certifies and further complies with Criminal Rule 42(a).

On July 26, 1988, during proceedings in *United States v. Godfrey (aka Blair) and Whitted*, Crim. Nos. M 4217–88 and M 4216–88, the court adjudicated Ms. Kraut in summary contempt of court for the following reasons:

1. After repeated warnings not to interrupt the court on that day and at

---

**3.** The court did file an order to show cause as to these incidents, but according to the parties'

briefs the case was dismissed on the government's motion on December 5, 1988.

previous appearances before the court, Ms. Kraut continually interrupted the court.

2. After a motion to withdraw from defendant Whitted's case because of a conflict of interest, the court requested that Ms. Kraut provide in writing the necessary information, including her fee arrangement with Mr. Whitted as retained counsel, for the court to determine possible CJA eligibility for Mr. Whitted; Ms. Kraut responded emphatically and repeatedly that she was not going to do this.

3. Ms. Kraut stated that the court's above request was "absurd."

The court's authority to hold a person in contempt is conferred upon it by 18 U.S.C. § 402 and D.C.Code § 11–944. * * * The above-mentioned incident unquestionably rose to the level of criminal contempt.

* * * The fine imposed by the court was $250 or 10 days in jail and was entered of record and delivered to contemnor on July 26.

Kraut noted this appeal on August 26, 1988.

## II.

 We first consider the question whether the notice of appeal was timely filed. According to D.C.App.R. 4(b)(1),

[a] notice of appeal in a criminal case shall be filed with the Clerk of the Superior Court within thirty days after entry of the judgment or order from which the appeal is taken unless a different time is

specified by the provisions of the District of Columbia Code.

In this case, Judge Wolf orally held Kraut in criminal contempt of court on July 26, 1988 and filed a written ruling on July 29, 1988 in compliance with the requirements of Super.Ct.Crim.R. 42(a), *supra* note 1. Kraut noted her appeal on August 26, 1988 —thirty-one days after the oral ruling but twenty-eight days after the written one.

The government argues that the time for noting the appeal began to run from the date—July 26, 1988—on which the judge imposed sentence and entered judgment on the docket.[4] The last of the thirty days during which Kraut could have noted an appeal, therefore, according to the government's theory, was August 25, 1988, one day before Kraut filed. The government contends that because an appeal is taken from the judgment, not from the certification of contempt, the date on which the judge files the certification is not relevant.

We disagree. Under Rule 42(a),

[a] criminal contempt may be punished summarily if the judge certifies that he [or she] saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the Court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

It is true we have never held that an appeal from a summary criminal contempt conviction is to be taken, for purposes of D.C. App.R. 4(b)(1), from the written ruling, not from the oral adjudication. Nor have we ever held that a summary contempt ruling is not ripe for appeal until all the conditions

---

4. The government cites several cases for the proposition that a judgment is final and thus appealable once the penalty is imposed and entered in the docket. *See, e.g., Berman v. United States*, 302 U.S. 211, 212, 58 S.Ct. 164, 166, 82 L.Ed. 204 (1937) ("Final judgment in a criminal case means sentence."); *In re Alexander*, 428 A.2d 812, 813 (D.C.1981) (trial court's oral and written summary contempt orders entered same day comprised final, appealable order), *cert. denied*, 454 U.S. 1149, 102 S.Ct. 1014, 71 L.Ed.2d 303 (1982); *Butler v. United States*, 379 A.2d 948, 949 (D.C.1977) (judgment appealable once sentence is imposed); *In re Cys*, 362 A.2d 726, 728–29 (D.C.1976) (contempt ruling not appealable because no sentence was imposed).

*Berman* and *Butler* are inapposite because they are not contempt cases. Nor do *Alexander* and *Cys*—which are Rule 42(a) cases—enhance the government's position. In *Alexander*, the court held the defendant in contempt and entered the required written ruling the same day, 428 A.2d at 813, 814 n. 1, leaving no room for the issue addressed in the instant case. In *Cys*, the court's failure to impose sentence meant that a prerequisite to a final, appealable order was missing, not that a sentence as such necessarily triggered appealability. Moreover, our reference in *Cys* to the trial court's filing a written Rule 42(a) statement eight months after the appeal was taken was altogether irrelevant to the decision, as elaborated in the text below.

of Rule 42(a) have been satisfied. In one case, however, we came close to saying just that. In *In re Brown*, 320 A.2d 92, 92 (D.C.1974), before we reached the merits of the appeal, we said:

At oral argument and after consideration of the record and briefs, it appeared that counsel for the parties—as well as the [trial court]—apparently misapprehended the *essential element* of an adjudication of criminal contempt. We, therefore, remanded the record to the trial court with direction to file, in the record, a certificate of contempt in accordance with Super.Ct.Crim.R. 42(a).

(emphasis added) But we did not call the lack of Rule 42(a) certification a jurisdictional bar; indeed, we implicitly treated the appeal as timely filed and merely ruled that we would not resolve the appeal until the certification was filed.

In a later case, moreover, we did reach the merits in the absence of a Rule 42(a) written recitation of the facts. In *Warrick v. United States*, 528 A.2d 438, 443–44 (D.C.1987), we reversed a summary criminal contempt conviction for insufficient evidence while merely noting that the required written statement, which had never been filed, "might have demonstrated, by describing [appellant's] tone of voice or accompanying conduct, for example, that the comment [which served as the basis for the contempt ruling] was indeed threatening or sinister." *Id.* at 444.

In another criminal contempt case, *In re Cys*, 362 A.2d 726, 728–29 (D.C.1976), we dismissed the appeal on jurisdictional grounds for lack of a final, appealable order because of the trial court's failure to impose a sanction. We also noted—without making anything of it—that "[i]t was not until 8 months after the appeal was taken that the court entered its written certification pursuant to Super.Ct.Crim.R. 42(a). . . ." *Id.* at 728.

Although *Warrick* and *Cys*, and even *Brown*, arguably imply that a Rule 42(a) written statement is not prerequisite to a final order essential to appellate jurisdiction, these cases do not so hold. Indeed, in none of them was this particular jurisdic-

tional issue even raised. We must, however, decide it here.

In *Williams v. United States*, 576 A.2d 1339 (D.C.1990), a recent non-summary criminal contempt case, *see id.* at 1341 n. 3, we were concerned "about those criminal contempt cases in which the same trial judge acts not only as complainant, but also as finder of fact and judge of the law." *Id.* at 1341. Because of the inherent danger in one person's performing the potentially conflicting roles of prosecutor, judge, and jury, and because of the appellate court's need to have a clear record on which to review that person's performance, we invoked our supervisory power to require that, "in non-summary criminal contempt cases tried by the same judge who initiated the contempt charges, the trial court must make specific findings of fact and conclusions of law responsive to the testimony offered[.]" *Id.* at 1341.

Our discussion in *Williams* of the importance of the fact-finding requirement is equally applicable to summary contempt cases, in which the trial judge always performs the roles of prosecutor, judge, and jury. We specifically noted in *Williams* that "the trial judge in a summary contempt proceeding, under Rule 42(a)," is required to " 'recite the facts' in the order of contempt 'signed by the judge and entered of record[,]' " and that perhaps this requirement is attributable to the inherent dangers of the judge's multiple roles. *Id.* at 1341 (quoting Rule 42(a)).

■ Recognizing, therefore, the importance of the fact-finding requirement of Rule 42(a), both in alleviating concerns about one person's performing multiple roles, *see id.*, and in facilitating judicial review, *see id.* at 1341, and, further, considering our remand of the record in *Brown* for entry of what we called "the essential element" of a written "certificate of contempt," 320 A.2d at 92, we are persuaded that the written statement required by Rule 42(a) is indeed central, not supplementary, to a final, appealable judgment of criminal contempt. *Cf. In re Gorfkle*, 444 A.2d 934, 940 (D.C.1982) (reviewing trial judge's "written order of contempt"); *Ap-*

*peal of Gregory*, 387 A.2d 720, 723 (D.C. 1978) (trial judge's order "satisfies Rule 42(a) in that it is a written order, signed by the trial judge and entered of record, which recites the facts in a manner sufficient to inform this court what conduct constituted the contempt"). We therefore now hold that a summary criminal contempt adjudication will not have a final order, ready for compliance by the defendant and ripe for review by this court, until the trial court itself has fully honored all requirements of Rule 42(a). In this case, the trial court's "criminal contempt ruling" conforming to Rule 42(a) was not filed until July 29, 1988. Appellant Kraut had thirty days from that date in which to file a notice of appeal.[5] Her notice filed on August 25, 1988, therefore, was timely.

### III.

■■■ We turn to the merits. Kraut contends that the evidence is insufficient for conviction. The elements of the offense of criminal contempt under D.C.Code § 11–944 (1989) are "(1) willful disobedience; (2) of a court order; and (3) causing an obstruction of the orderly administration of justice." *In re Thompson*, 454 A.2d 1324, 1326 (D.C.1982) (per curiam). In applying these elements, "a judge must make a balanced value judgment case-by-case, based on the proof in each case." *Id.* at 1327 (internal quotations and citation omitted). Each element, of course, must be proved beyond a reasonable doubt. *Gorfkle*, 444 A.2d at 939.

5. Because the parties had "previous notice ... of the court's decision," D.C.App.R. 4(b)(4), which allows five extra days for noting appeal in specific cases, does not apply here.

6. At the hearing, Judge Wolf listed his three grounds, prefacing the second and third with the comment, "I don't mean this is separate summary contempt, but in addition...." In his written ruling, the judge wrote, "the court adjudicated Ms. Kraut in summary contempt of court for the following reasons: [listing the three reasons]. * * * The above-mentioned incidents unquestionably rose to the level of criminal contempt." To the extent that any ambiguity may inhere in the record, we must resolve doubts in the defendant-appellant's favor. We have emphasized that in summary contempt

There can be no question—indeed, the government acknowledges—that Judge Wolf premised his adjudication of contempt on a cumulation of three grounds.[6] Judge Wolf ruled that Kraut's continual interruptions, her refusal to provide the "necessary information" for the court to determine her client's CJA eligibility, and her comment in open court that his request for that information was "absurd"—taken together— amounted to contempt of court. We therefore must look at the evidence underlying these three reasons to ascertain "what conduct constituted the contempt." *Appeal of Gregory*, 387 A.2d at 723. We focus initially on the judge's second reason: his written finding [7] with respect to Kraut's refusal to file the requested "necessary information" about the client. Judge Wolf wrote:

2. After a motion to withdraw from defendant Whitted's case because of a conflict of interest, the court requested that Ms. Kraut provide in writing the necessary information, including her fee arrangement with Mr. Whitted as retained counsel, for the court to determine possible CJA eligibility for Mr. Whitted; Ms. Kraut responded emphatically and repeatedly that she was not going to do this.

According to the transcript of the hearing, however, Kraut did agree to comply with the fee-arrangement part of the court's request. Specifically, Judge Wolf said:

I therefore require under the CJA standards that you file a written motion asking to be relieved under these circumstances and setting forth in full and in

proceedings, the basis for a finding of contempt must be set forth "with particularity," *In re Gorfkle*, 444 A.2d 934, 939 (D.C.1982).

7. *See Gorfkle*, 444 A.2d at 940 (basing analysis on trial court's written order in summary criminal contempt case); *Appeal of Gregory*, 387 A.2d at 723 (written order informs appellate court of "what conduct constituted the contempt"). For the reasons we have already expressed as to why the written Rule 42(a) statement is essential to a final order, we consider the written ruling the definitive statement of the trial court's view to the allegedly contemptuous behavior. To the extent differences may exist between the transcript of the oral ruling and the later written ruling, the latter controls.

writing your fee arrangement with him * * * [s]o that I understand that he is entitled to a free lawyer.

Kraut replied, "Very well," and "All right." Following her acquiescence, however, the judge made an additional request: that Kraut file a financial statement for Whitted that could be used for determining his eligibility under CJA guidelines. When Kraut asked, "Well what form do you want?," the judge replied: "That's your problem, you do it, you're his counsel. * * * You review the CJA guidelines and find out." The colloquy deteriorated, and Kraut refused to comply with this second request, eventually calling it "absurd."

Kraut, therefore, agreed to one of Judge Wolf's requests (the fee arrangement) but not to the other (the financial statement). By saying in his written ruling that Kraut had refused to provide the "necessary information, including her fee arrangement," Judge Wolf appeared to be finding that Kraut had rejected both of his requests, not just one as the record itself reflects. It appears, therefore, that in the aftermath of the heated exchange over whether Kraut was obliged to supply financial information for Whitted suitably organized in the precise way necessary to permit a CJA eligibility calculation, Judge Wolf erroneously found that Kraut had refused to provide a major piece of information that she had actually agreed to provide: her fee arrangement with Whitted. At best, therefore, Judge Wolf's second written ground for his contempt ruling would appear to be only half correct, with the balance clearly erroneous.[8]

Perhaps we could infer that because CJA eligibility was the issue, the judge's receipt of Kraut's fee arrangement without Whitted's financial statement—a supposed half loaf—would be useless and thus amount to no loaf at all. Arguably for that reason, therefore, the judge's overly-broad understanding of what Kraut refused to do did not taint his finding that Kraut had refused to supply the "necessary information." On the other hand, after holding Kraut in contempt—but before issuing his written rul-

ing—Judge Wolf appears to have retracted his earlier position that Kraut herself should supply Whitted's financial information in a format suitable for a CJA calculation. At the end of the hearing, Judge Wolf told Kraut:

> Furthermore, I want a financial statement from Mr. Whitted indicating whether—just a financial statement; *it doesn't have to be detailed and it doesn't have to match the CJA*, indicating whether he qualifies for free legal representation, having had retained counsel in this case. [Emphasis added.]

Apparently, therefore, the judge eventually conceded the only point that caused Kraut's objection (and the epithet "absurd") in the first place: the particular format for the financial statement. Thus, it is clear from the record that, before holding Kraut in contempt, the judge never had asked her for the type of financial statement he eventually said would be appropriate. Nor had Kraut ever refused to provide such a statement.

With record support lacking for a substantial portion of at least one of the three proffered grounds, can we say that Judge Wolf nonetheless actually intended to hold Kraut in contempt for the conduct that was established? Presumably, Judge Wolf could have found Kraut in contempt based only on her repeated interruptions or, perhaps, only on her characterization of his request for information as "absurd." Our review, however, must be based on the grounds actually cited by the court in its Rule 42(a) statement. *See Eaton v. City of Tulsa*, 415 U.S. 697, 698, 94 S.Ct. 1228, 1229, 39 L.Ed.2d 693 (1974) (per curiam) (question, on review, "is not upon what evidence the trial judge *could* find petitioner guilty but upon what evidence the trial judge *did* find petitioner guilty") (emphasis in original). Judge Wolf's written statement indicated that there were three grounds which cumulatively "rose to the level of criminal contempt." *Supra* at 1312 & note 6. We would not be warranted in inferring the judge—who left the bench to think the matter over—considered

---

8. It follows that Judge Wolf's third ground for contempt—Kraut's calling his request "absurd"—would only be half correct as well; Kraut did

not so characterize the judge's request for her fee arrangement with Whitted.

Kraut in contempt for fewer than these three. See *supra* note 6. Had he wished to hold Kraut in contempt based only on one or two of the grounds, his written statement—essentially defining the elements of the crime for this case—should have so indicated. We cannot substitute our own judgment to find Kraut in contempt of the trial court for reasons not clearly articulated by the trial court, even if the evidence would support such a finding. *See id.*, 415 U.S. at 698, 94 S.Ct. at 1229. Thus, we conclude that willful disobedience of a court order has not been established beyond a reasonable doubt. *See Gorfkle*, 444 A.2d at 939–40. Accordingly, we must reverse the conviction and order the charge dismissed.[9]

*So ordered.*

---

**9.** Reversal is premised on insufficient evidence to support conviction of the elements of contempt—*i.e.*, of the critical mass of contumacious behavior—the court itself set forth. Thus, dismissal of the charge here obviates any possibility of double jeopardy, *see Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and avoids any potential allegation that the trial judge's objectivity on remand might be undermined by possible "outward[ ] embroil[ment] in a personal controversy with the alleged contemnor." *United States v. Meyer,* 149 U.S.App. D.C. 212, 224, 462 F.2d 827, 839 (1972) (discussing reasons for trial court's recusal in summary contempt case). Furthermore, while not unmindful of the need to uphold "trial judges' reasonable efforts to maintain an orderly and decorous atmosphere in the courtroom," *In re Gorfkle, supra,* 444 A.2d at 939, a remand for clarification here would, we think, be improper, in light both of the general strictness imposed in use of summary contempt, *id.; see supra* note 6, and of the restriction on further trial court review in cases of error. *See Davis v. United States,* 564 A.2d 31, 42 (D.C.1989) (en banc).